IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IAN SHORT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-CV-766-TCK-PJC |
| ) | |
| USAA CASUALTY INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is Plaintiff's Opposed Application to Amend Complaint ("Motion to Amend") (Doc. 13), wherein Plaintiff seeks to amend his original pleading to include class allegations. Defendant argues that the Motion to Amend must be denied on grounds of the futility of the proposed class allegations.

**I.     Factual Background**

Plaintiff Ian Short filed a Petition in Tulsa County District Court against Defendant USAA Casualty Insurance Company ("USAA CIC"), alleging that USAA CIC's denial of his insurance claim constituted breach of contract and bad faith. Plaintiff seeks to file the Amended Complaint attached as Exhibit 1 to his reply brief.[1] The PAC (1) adds two defendants, United Services Automobile Association ("USAA") and USAA General Indemnity Company ("USAA GIC");[2] and

---

[1] Based on USAA CIC's arguments in opposition to amendment, Plaintiff attached to his reply brief a revised proposed Amended Complaint ("PAC"). In this revised version, Plaintiff changed the alleged wrongful conduct from (1) denying claims based on procedural coding errors to (2) denying claims based on inadequate medical documentation. USAA CIC did not seek leave to file additional briefing responding to the revised version. For purposes of its futility analysis, the Court has analyzed the allegations in the PAC.

[2] In the PAC, all three Defendants are collectively referred to as USAA.

(2) adds class allegations. The PAC sets forth the following facts. Defendants sold a form of first-party medical coverage that provides payment to covered persons for necessary and appropriate health care expenses for bodily injury resulting from a covered automobile accident. Such coverage is commonly referred to as Medical Payments ("Med Pay") coverage and/or Personal Injury Protection ("PIP") coverage.

Defendants contracted with Concentra Integrated Services, Inc. d/b/a Auto Injury Solutions ("AIS") to review medical provider charges submitted on Med Pay and PIP claims. AIS employs a computer software program and/or peer review audit process to determine the amount to be paid for submitted charges for medical, dental, and other health care treatments that are determined to be medically necessary. Relying on the software and/or peer review audit process, AIS deemed rendered medical services "not medically necessary" as a result of what it perceived to be inadequate medical documentation. According to Plaintiff, the process employed by AIS categorically eliminates or reduces charges actually incurred based on perceived deficiencies in the medical documentation provided. Defendants relied solely on the AIS reviews to reduce or deny its insureds Med Pay and PIP claims. According to the PAC, Defendants' denial or reduction of claims based on a deviation between the insured's medical provider's bills and what AIS's software and/or peer reviewers deem adequate or appropriate medical documentation constitutes: (1) a breach of Defendants' contractual duty to pay all reasonable medical expenses; and (2) a breach of Defendants' duty of good faith and fair dealing, including their obligation to conduct a full and fair evaluation of each claim.

Plaintiff proposes the following class definition**:**

> (1) All insureds under auto policies with Med Pay, PIP, First Party Benefits, Medical Expense Benefits, Automobile Death and Disability, or any other first-party medical coverage (collectively referred to as "Medpay") issued by USAA who were injured in covered automobile accidents:
> (a) who made claims for the above-mentioned types of medical payment benefits from February 3, 2005 through the present, and
> (b) who had bills for health care expenses submitted to a medical/fee review audit ("Audit") by AIS, or its parents, subsidiaries or affiliates, which recommended payment of less than the full amount of those submitted bills; and
> (c) USAA paid less than the full amount of those submitted health care charges as a result of AIS payment recommendations based in whole or in part on an *ipso facto* determination that said charges were unreasonable as a result of inadequate documentation; and
> (d) USAA paid an amount less than the limits of coverage for Medpay benefits under the applicable auto insurance policy.

(PAC, ¶ 32.) Plaintiff alleges that "Defendants['] failure to pay legitimate medical payment claims as a result of its sole reliance on the opinions provided by AIS that the submitted documentation did not support a finding of medical necessity has affected thousands across the country." (*Id.* ¶ 34.) Plaintiff further alleges that such practice was "a systematic and mechanical practice carried out by the Defendants in the same manner against all of the class members." (*Id.* ¶ 33.)

In opposition to the Motion to Amend, USAA CIC argues that the proposed amendments are futile because Plaintiff cannot satisfy the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"), which governs the certification of class actions. In opposition to the motion to amend, USAA CIC attached several exhibits outside the pleadings. For reasons explained below, the Court will not consider such evidence in ruling on the motion to amend.

3

**II.     Standard**

Federal Rule of Civil Procedure 15(a)(2) ("Rule 15"), which governs the Motion to Amend, provides that a court should "freely give leave when justice so requires."  Courts generally deny leave to amend only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety*, *City, and Cnty. of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) (quotation omitted).  In this case, USAA CIC urges the Court to deny the Motion to Amend on grounds of futility.  "A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason . . . ." *E.SPIRE Commc'ns, Inc. v. N.M. Pub. Reg. Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004).  Thus, a court may generally deny leave to amend where the proposed amendments fail to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) ("The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim . . . .").

In the context of a motion to amend to add class allegations, there is conflicting authority regarding whether and to what degree Rule 15's futility analysis requires examination of Rule 23's class certification requirements.  *Compare, e.g., Presser v. Key Food Stores Coop., Inc.*, 218 F.R.D. 53, 56 (E.D.N.Y. 2003) (holding that in addressing motion to amend to add class allegations, Rule 15's futility analysis requires evaluation of "the likelihood that [the] proposed class will be certified pursuant to [Rule] 23") *with Barnett v. Cnty. of Contra Costa*, No. 04-4437, 2010 WL 2528523, at * 4 (N.D. Cal. June 18, 2010) (holding that Rule 23's requirements "should not be tested" on a motion to amend). The Tenth Circuit has not offered direct guidance.  *See Lymon v. Aramark Corp.*,

4

No. 08-0386, 2009 WL 5220285, at * 3 (D.N.M. Dec. 12, 2009) (noting lack of Tenth Circuit authority and applying *Presser*'s lenient "likelihood" of class certification test) (denying leave to amend to add class allegations where plaintiff's claim centered on individual facts, and the proposed amendments failed to assert who the potential class members were, what their injuries were, or what conduct caused their injuries). Following *Presser* and *Lymon*'s guidance, the Court will conduct a relaxed "likelihood" of class certification analysis, considering only the allegations in the PAC. *See Presser*, 218 F.R.D. at 57 (analyzing futility by considering face of the proposed amended complaint and holding that a court "may limit its inquiry into the class action requirements at the amendment stage when certification will occur at a later time") (holding that arguments against certification are more appropriately addressed in the context of motions to certify the proposed classes).

### III.    Likelihood of Class Certification Based on Allegations in PAC

In order to ultimately succeed in certifying her proposed class action, Plaintiff must satisfy the four requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiff must also satisfy Rule 23(b)(3), which requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. USSA CIC argues that amendment is futile because: (1) Plaintiff cannot satisfy the

5

typicality requirement; and (2) Plaintiff cannot satisfy the commonality and predominance requirement.[3]

**A.    Typicality**

Rule 23(a)(3) requires the claims of the named plaintiff to be typical of the claims of the class he seeks to represent. *See DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010). The interests and claims of the named plaintiff and class members need not be identical to satisfy typicality. *See id.* Instead, if the claims of the named plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality. *Id.* at 1198-99.

USSA CIC argues that Plaintiff's claim is not typical of the proposed class because (1) Plaintiff failed to comply with a contractual obligation to complete a MedPay application and a medical authorization form, and (2) such breach entitles USSA CIC to a complete defense to Plaintiff's breach of contract and bad faith claims. USSA CIC argues that, had Plaintiff complied with this obligation, it "might have been able to obtain more detailed medical records from [Plaintiff's treating physician], or a better explanation from [the physician] of the history and reasons for the treatment that Plaintiff obtained." (Resp. to Mot. to Amend 17.) In response, Plaintiff argues that his failure to provide these items does "not change the fact that [proposed Defendants] relied on the AIS report, which stated that medical necessity could not be determined based on the documentation provided, to *deny* Plaintiff's claim." (Reply in Support of Mot. to Amend 5.)

---

[3] USAA CIC also argued that Plaintiff was not a member of the proposed class because his claim was not denied solely due to procedural coding. This argument is moot in light of the allegations in the revised version of the PAC.

6

Based solely on the PAC, the Court is satisfied that Plaintiff's claim is likely typical of the proposed class. First, the Court is unwilling to consider correspondence or other evidence at this stage of the proceedings, which is necessary to USAA CIC's argument. Second, assuming Plaintiff did fail to provide certain authorizations, the Court is not convinced that this results in a complete defense in this case. The PAC's theory of liability is that AIS was relying upon a "lack of adequate medical documentation" as a method of systematically reducing or denying claims where a treating physician's bills had been submitted. Under Plaintiff's theory of liability, it may be of less importance whether the particular class member did or did not submit a medical authorization than in cases where, for example, the insurer had no medical bills or records whatsoever due to a plaintiff's failure to provide certain authorizations. *Cf. Garrett v. Ohio Farmers Ins. Co.*, No. 2002-L-182, 2005 WL 280831, at * 4 (Ohio App. Feb. 4, 2005) (cited by USAA CIC) (the insured's failure to provide proper medical authorization wholly prevented insurer from receiving any medical bills from treating hospital and from timely evaluating insured's claim) (holding that breach of this contractual condition precedent was fatal to the plaintiff's breach of contract and bad faith claims for undue delay in paying claim). In any event, the typicality of Plaintiff's claim turns on an evidentiary record and is more properly addressed at later stages of the proceedings.

### B.     Commonality and Predominance

Rule 23(b)(3) requires a finding that:

[T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

7

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

USAA CIC challenges Plaintiff's ability to demonstrate that common questions of fact or law will predominate over individual questions. Specifically, it argues:

> [T]here are many unique reasons that all or part of a submitted MedPay claim might not be paid, such as:
> - the medical treatment was not related to the accident;
> - the medical treatment was not provided within a year of the auto accident;
> - the accident in question did not involve a covered vehicle;
> - the medical treatment was not medically necessary;
> - the charges for the medical treatment were not reasonable;
> - the insured and/or the medical provider did [not] provide the proper supporting documentation to determine whether treatments was [sic] necessary and related to a covered accident.

(Resp. to Mot. to Amend 21.) Plaintiff argues that USAA CIC "fails to recognize how narrow the proposed class is" and that individuals will only be a member of the class if their claim was underpaid or denied "*based on* inadequate documentation." (Reply in Support of Mot. to Amend 7 (emphasis added).) Plaintiff further contends that it is "challenging the practice and procedure of USAA in denying claims *based on* inadequate documentation" and that this is a common, predominate question among the proposed class. (*Id.* 8-9 (emphasis added).)

Based on Plaintiff's allegations, the Court finds it likely that common questions predominate over individual questions. USAA CIC's argument regarding the "myriad" reasons for denial of a claim is not convincing in light of Plaintiff's limited theory of liability. Such theory is limited to USAA CIC's automatic or systematic denials or reductions of payments to an insured based on AIS' finding of "inadequate documentation" in support of submitted medical bills. While there may be myriad reasons for denying a claim, it is the Court's understanding that Plaintiff seeks to include only those denials or reductions "based on" inadequate documentation in support of submitted

8

medical bills. The Court does have significant concerns about Plaintiff's use of the phrase "based in whole or in part" in its class definition. However, Plaintiff's statements in his reply brief indicate that he may seek to narrow this definition to "based on." (*See* Reply in Support of Mot. to Amend 7-9.) Further, even under the proposed definition, the Court finds that these questions related to typicality and the scope of the proposed class will be better addressed during the class certification stage.

USAA CIC also argues that the alleged breach of contract and bad faith could never be proved on a class-wide basis because the necessary proof is too individualized. The Court disagrees. If USAA CIC had the routine practice of refusing to pay medical bills submitted by providers based on AIS' finding of "inadequate documentation," and such practice constitutes breach of contract and/or bad faith, it is likely that this could be litigated on a class-wide basis.

**IV.    Addition of USAA and USAA GIC**

In the PAC, Plaintiff alleges that USAA is a "reciprocal interinsurance exchange" and that USAA CIC and USAA GIC are "part of the reciprocal insurance exchange." Plaintiff seeks to hold all three parties liable for breach of contract and bad faith. USAA CIC argues that the addition of USAA and USAA GIC is futile because (1) they are not parties to the relevant insurance contract, and (2) they cannot be held liable under any alter ego theory of liability. The Court will address separately whether amendment is futile as to the bad faith claim and the breach of contract claim.

### A.     Bad Faith Claim

"If one corporation is simply the instrumentality of another corporation, the separation between the two may be disregarded and treated as one for the purpose of tort law." *See Oliver v. Farmers Ins. Grp. of Cos.*, 941 P.2d 985, 987 (Okla. 1997). This legal principle applies to the tort of insurance bad faith. *See id.* (holding that general test for imposing alter ego liability set forth in *Frazier v. Bryan Mem'l Hosp. Auth.*, 775 P.2d 281, 288 (Okla.1989), applies to tort of bad faith). Where a non-party to an insurance contract is "related to and involved in the same insurance group" as the contracting party, the question of alter ego liability is generally one for the trier of fact. *Id.* Plaintiff has alleged that USAA is an insurance exchange, of which USAA CIC and USAA GIC are members. Plaintiff argues that "the proposed Defendants are in reality instrumentalities of each other, under the operation and control of [USAA]." (Reply in Support of Mot. to Amend 9.) Based on *Oliver*, this is sufficient to avoid a motion to dismiss on the question of alter ego liability for the tort of bad faith.

### B.     Breach of Contract Claim

In the insurance contract at issue, which is part of the record and referenced in the PAC, a "USAA" logo appears in the left-hand corner of certain pages. (Resp. to Mot. to Amend, Ex. 1.) In a "notice" section, the contract states that "[t]his notice is provided by the following companies: United Services Automobile Association and USAA Casualty Insurance Company." (*Id.* at 5.) In addition, "USAA" is used throughout the policy. (*See, e.g., id.* at 4 ("At USAA, we're committed to providing you with superior service and establishing fair and reasonable rates.").) On this record, the Court is unwilling to conclude that USAA is not a proper party to the breach of contract claim.

USAA GIC is not mentioned in the insurance contract. Plaintiff argues that USAA GIC may be potentially liable for breach of contract under *Frazier*'s vicarious liability principles.[4] The only cause of action at issue in *Oliver* was the tort of insurance bad faith. *See Oliver*, 941 P.2d at 987. The case relied upon in *Oliver – Frazier v. Bryan Memorial Hospital Authority*, 775 P.2d 281, 288 (Okla. 1989) – also addressed tort liability. *See Frazier*, 775 P.2d at 288 ("The question whether an allegedly dominant corporation may be held liable for a subservient entity's *tort* hinges primarily on control."). However, it appears that Oklahoma courts may extend *Frazier*'s principles to contract actions under certain limited circumstances. *See Okla. Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 160 P.3d 936, 945 & n.18 (Okla. 2007) (considering whether non-party to arbitration agreement could be considered "one legal entity" with named party in arbitration agreement under *Frazier*'s principles, but declining to so hold on evidentiary record presented). Again, as with the bad faith tort, Plaintiff has sufficiently alleged that USAA GIC and USSA are all part of a reciprocal insurance exchange and are therefore mere instrumentalities of one another. This may not bear out in reality, but the Court has no understanding of these three corporations' relationship or corporate structure at this point in the litigation. For purposes of a Rule 15 futility argument, the Court finds the PAC's allegations sufficient.

## V. Conclusion

Plaintiff's Opposed Application to Amend Complaint ("Motion to Amend") (Doc. 13) is GRANTED, and Plaintiff shall be permitted to file its amended complaint no later than January 27,

---

[4] The Court need not address alter ego liability with respect to USAA because the Court finds that the claim is not futile against USAA based on basic contract principles. It may be necessary to address this issue at a later time with respect to USAA, if USAA CIC is deemed the sole party to the insurance contract.

2012.  USAA CIC shall not be precluded from re-urging any arguments made in this motion at later stages of the proceedings.  The parties are ordered to file a Second Joint Status Report no later than February 7, 2012.

**SO ORDERED this 24th day of January, 2012.**

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**